UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELO PARKS,
        Petitioner,

                                          Case No. 08-10780
v.                                        Honorable Patrick J. Duggan

NICK LUDWICK,
        Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS

At a session of said Court, held in the U.S. District
Courthouse, Eastern District
of Michigan on November 20, 2009.

PRESENT:  HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

### I.  Introduction

This is a habeas case under 28 U.S.C. § 2254.  On May 8, 2006, Michigan prisoner Angelo David Parks ("Petitioner") was convicted of first-degree home invasion and aggravated stalking following a bench trial in the Circuit Court for Wayne County, Michigan.  On June 16, 2006, the trial court sentenced Petitioner as a third habitual offender to imprisonment for a term of thirteen to forty years on the home invasion conviction and one to five years for the aggravated stalking conviction.  In his habeas application, Petitioner claims that there was insufficient evidence to support the home invasion conviction.  For the reasons set forth herein, the Court denies with prejudice the petition for habeas corpus relief.

### II.  Factual Background

The incidents that led to Petitioner's convictions initially began in the early morning hours of November 2, 2005, in Redford, Michigan. The victim, Tia McPike-McDyess, was at home with her two-year-old daughter and a friend, Keenan Stangle. McPike-McDyess and her daughter were sleeping in the daughter's bedroom and Stangle was sleeping in the master bedroom. McPike-McDyess was awakened at or around 3:30 a.m. when her home telephone rang. The caller identification showed that the incoming call was from her own cell phone. (4/25/06 Tr. at 22.) McPike-McDyess did not answer the phone, but began looking for her cell phone. As she did, she discovered that several items, including her cell phone, were missing from her home. (*Id*. at 23.) McPike-McDyess then received several more calls from her cell phone and she finally answered on the second or third call. (*Id*. at 24.)

When she did, the caller (a man) asked about the man who was in her home and why the caller was not the one with her. (*Id*. at 25.) The caller also said, "I was there at your house," "I heard you upstairs with him," and again asked, "Why wasn't it me?" (*Id*.) The individual called McPike-McDyess another five to ten times the morning of November 2, and at some point McPike-McDyess started recording the conversations. (*Id*.)

After November 2, McPike-McDyess received calls from the same individual almost daily and she continued to record the calls. By the time Petitioner was arrested, McPike-McDyess had recorded over two hours of calls from the individual. During the taped conversations, the caller "expresses his sexual desires about Ms. McPike-

McDyess."[1] (Doc. 1 at 3.) McPike-McDyess responds with invitations to the caller to come to her house for sex, which she explained she did in an attempt to secure the return of her stolen items and not because she actually intended to have sex with the caller. (*Id*.)

On November 26, 2005, between 11:30 p.m. and midnight, McPike-McDyess was at home, asleep on the living room couch with her daughter. (4/25/06 Tr. at 31.) Her dog barked at something toward the back of the house. As McPike-McDyess moved toward the back of the house, she felt air coming from her daughter's room. She went into the room and saw a man outside the open bedroom window, with his hands in the opening. McPike-McDyess immediately turned on the light in the room, went to shut the window, and at the same time called the police on her cell phone. At this point, the man was standing immediately outside at her back door. (4/25/06 Tr. at 33.) He then threw something toward her, said "I'm going to get you," kicked at the back door, and fled on foot. (*Id*. at 36.) McPike-McDyess had never seen this individual before that night. She recognized the man's voice, however, as the person who had been calling her. (4/25/06 Tr. at 37.)

The police arrived shortly thereafter and discovered footprints in the snow around McPike-McDyess' home. They therefore called in a canine unit. After two hours of tracking, a police dog tracked to Petitioner's residence, which was approximately two

---

[1] The recordings of the telephone calls have not been submitted as part of the record in this action. The Court therefore has no means of determining whether the state court's or prosecutor's descriptions of the contents of those calls are a reasonable determination of the facts presented. As the Court finds sufficient evidence to support Petitioner's conviction based on the content of the calls as he describes them, it is relying solely on his description.

miles away in Detroit. (4/26/06 Tr. at 66-67.) The officers knocked on the front door and spoke with Petitioner, eventually asking him if he would be willing to step outside for a show-up. Petitioner consented.

At this time, the police brought McPike-McDyess in a patrol car to Petitioner's residence. They told McPike-McDyess that they "[had] a suspect and [wanted her] to see if this is the person that was at [her] house . . ." (4/25/06 Tr. at 38.) When McPike-McDyess saw Petitioner, she recognized him immediately as the person at her house. (*Id*. at 38-40.) Following the identification, the police arrested Petitioner and shortly thereafter obtained a search warrant for Petitioner's residence. During the search, the police found the items taken from McPike-McDyess' home on November 2. (4/26/06 Tr. at 6-12.)

### III.    Procedural History

Petitioner was charged with two counts of first-degree home invasion, aggravated stalking, and larceny. On May 8, 2006, Wayne County Circuit Court Judge Bruce Morrow found Petitioner guilty of aggravated stalking and one count of first-degree home invasion based on the underlying felony of intent to commit first-degree criminal sexual conduct. Judge Morrow sentenced Petitioner on June 16, 2006.

Following his conviction and sentencing, Petitioner filed an appeal as of right challenging the sufficiency of the evidence to support his first-degree home invasion conviction. The Michigan Court of Appeals affirmed. *People v. Parks*, No. 271291, 2007 WL 2684003 (Mich. Ct. App. Sept. 13, 2007) (unpublished opinion). Petitioner

raised the same claim in an application for leave to appeal with the Michigan Supreme Court, which the Court denied on January 8, 2008. *People v. Parks*, 480 Mich. 1011, 743 N.W.2d 37 (2008).

On February 25, 2008, Petitioner submitted the present petition for writ of habeas corpus, raising the same insufficiency of the evidence claim that he presented to the state courts. Respondent has filed an answer to the petition asserting that it should be denied for lack of merit. In an "[o]bjection" to Respondent's answer, Petitioner appears to raise a new claim asserting that he was convicted of a charge not originally contained in the information.

### IV.     Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under § 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination

5

of the facts." *Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848, 1852-53 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*, 120 S. Ct. at 1523.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409, 120 S. Ct. at 1521. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S. Ct. at 1522. "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25, 123 S. Ct. 357, 360 (2002).

**V.     Analysis**

    **A.     Insufficiency of the Evidence**

In his petition, Petitioner asserts that the prosecution presented insufficient

6

evidence to support his conviction of first-degree home invasion– specifically the underlying felony of criminal sexual conduct.  At trial, Petitioner was convicted of first-degree home invasion with the intent to commit the underlying felony of first-degree criminal sexual conduct.  On appeal, the Michigan Court of Appeals ruled that there was insufficient evidence to establish the underlying felony of first-degree criminal sexual conduct, but that there was sufficient evidence to support an underlying felony of third- or fourth-degree criminal sexual conduct.  The appellate court therefore affirmed Petitioner's first-degree home invasion conviction.  The court explained:

> The evidence does not support using first-degree criminal sexual conduct as the underlying felony to support the home invasion conviction because, while the evidence showed that defendant intended to have forced sex with McPike-McDyess, there is no evidence in the record to show that defendant intended to cause personal injury to McPike-McDyess while he was in her home.
>
> However, while the elements of first-degree sexual assault are not met here, any other degree of criminal sexual conduct will suffice to support a first-degree home invasion conviction. MCL 750.110a.  But, like first-degree CSC, second-degree CSC also includes a requirement of personal injury, which is not met.  MCL 750.520c(1)(f).  Additionally, this Court has recognized that all criminal sexual conduct crimes are actually a specialized or aggravated form of assault and, accordingly, held that fourth-degree criminal sexual conduct constitutes an assault for the purposes of the home invasion statute. *Musser*, *supra*, pp 215, 223-224.  Under MCL 750.520e(1), a person who engages in sexual contact that is accomplished by force or coercion is guilty of fourth-degree criminal sexual conduct. Sexual contact includes an intentional touching of the victim's intimate parts for the purpose of sexual arousal or gratification. *People v. Capriccioso*, 207 Mich App 100, 103; 523 NW2d 846 (1994).

There is insufficient evidence to show that defendant intended to cause personal injury to McPike-McDyess, and therefore, insufficient evidence to use first or second-degree CSC as the underlying felony for first-degree home invasion. However, there is sufficient evidence to show that defendant intended to commit some form of criminal sexual conduct. The elements common to third and fourth-degree criminal sexual conduct include: (1) sexual contact (fourth) or sexual penetration (third), and (2) force or coercion. MCL 750.520d(1)(b); MCL 750.520e(1). Therefore, defendant's first-degree home invasion conviction can be upheld as long as he intended to have sexual contact or sexual penetration with McPike-McDyess by force or coercion. Both of these elements are met in this case. It is abundantly clear from defendant's actions and conversations that he intended to have either forced sexual contact or sexual penetration with McPike-McDyess. On the tapes, he frequently expressed his desire for sex or sexual intercourse, and made other sexually explicit comments.

Defendant argues on appeal that his comments and actions only expressed his desire for consensual sex, and not an intention to commit criminal sexual conduct. However, intent can be inferred from defendant's acts and from surrounding circumstances. *People v. Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001). McPike-McDyess told defendant she was willing to have sex with him. In response, defendant told her he did not believe her, or asked if she called the police. At one point, defendant even said he would not come over because McPike-McDyess might shoot him. Additionally, defendant broke into McPike-McDyess's house a second time. He did not ring the doorbell or tell her that he was coming over for sex. Instead, he tried to break in through her daughter's bedroom window. When McPike-McDyess tried to shut the window to keep defendant out, he did not walk away, but instead threw something at her and physically threatened her. Defendant's actions do not show that he expected consensual sex. It can be inferred from defendant's words and actions, and from circumstances generally, that defendant intended to commit criminal sexual conduct with McPike-McDyess when he broke into her house.

*People v. Parker*, 2007 WL 2684003, at *1-2.

"A habeas court reviews a claim that the evidence at trial was insufficient for a conviction by asking 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)). This standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16, 99 S. Ct. at 2792 n.16. When applying this standard, a habeas court does not re-weigh the evidence or redetermine the credibility of the witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). "It is the province of the fact-finder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Id*. Therefore, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Id*. (citations omitted).

The Michigan Court of Appeals' adjudication of Petitioner's home-invasion claim is neither contrary to nor an unreasonable application of federal law. The state court's adjudication of Petitioner's claim also did not result in a decision based on an unreasonable determination of the facts in light of the evidence presented at trial. Pursuant to Michigan law, first-degree home invasion requires proof that, while a person was lawfully in the dwelling, the defendant broke into the dwelling or entered the

dwelling without permission with intent to commit a felony, larceny or assault in the dwelling or committed a felony, larceny, or assault while entering, present in, or exiting the dwelling. Mich. Comp. Laws. § 750.110a. The Michigan Courts have held that all criminal sexual conduct crimes are "a specialized or aggravated form of assault." *People v. Musser*, 259 Mich. App. 222, 223-24, 673 N.W.2d 800, 805 (2003). Third- and fourth-degree criminal sexual conduct can be proven by showing that the defendant: (1) sexually penetrated the victim (third) or engaged in sexual contact with the victim (fourth) and (2) force or coercion. Mich. Comp. Laws §§ 750.520d(1)(b), 750.520e(1)(b).

The evidence present at Petitioner's trial indicated that Petitioner broke into McPike-McDyess's home while she was lawfully inside the dwelling. While Petitioner claims that he was at McPike-McDyess' home to have consensual sex, there was circumstantial evidence from which a rational trier of fact could conclude that he intended to engage in some form of sexual contact with McPike-McDyess by force or coercion. Petitioner did not appear on McPike-McDyess' door-step and knock on the front door. He broke into her home through a window at the back of the house, in the middle of the night. Prior to that point in time, Petitioner had made numerous daily telephone calls to McPike-McDyess expressing his desire to have sex with her. When McPike-McDyess tried to shut the window to keep Petitioner out, he did not leave, but instead threw something at her, kicked at the back door, and threatened that he was "going to get [her]." Therefore, there was sufficient evidence to lead a reasonable trier of fact to find Petitioner guilty of first-degree home invasion.

**B.     Improper Amendment of Information Claim**

To the extent Petitioner is seeking in his objection to the response to assert a new habeas claim– that he was required to answer a charge not contained in the original information– this claim was neither presented to the state courts on direct appeal nor raised in Petitioner's initial habeas corpus application. A reply to an answer to a habeas petition is not the proper pleading for a habeas petitioner to raise additional grounds for relief. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005); *Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004) (internal citations omitted). In fact, a claim first presented in a Petitioner's traverse rather than in his habeas petition is not properly before the district court. *Tyler*, 416 F.3d at 504 (citations omitted); *Burns*, 328 F. Supp. 2d at 724 (advising that "[a] court cannot consider new issues raised in a traverse or reply to the State's answer.")

Moreover, a prisoner challenging his confinement in federal court must exhaust his state court remedies before seeking federal habeas corpus relief by fairly presenting the substance of each federal constitutional claim to the state courts. *See* 28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S. Ct. 2546, 2554-55 (1991). Michigan prisoners must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking habeas relief in federal court. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The petitioner bears the burden of showing that state court remedies have been exhausted. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987). Petitioner has not done so with respect to this claim. The

Court therefore declines to address this issue because it is unexhausted.

## VI.  Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claim contained in his petition.  Accordingly,

**IT IS ORDERED**, that the Court **DENIES** Petitioner's application for writ of habeas corpus pursuant to 28 U.S.C. § 2244.

s/PATRICK J. DUGGAN<br>UNITED STATES DISTRICT JUDGE

Copies to:
Angelo Parks, #180419
Kinross Correctional Facility
16770 S. Watertower Drive
Kincheloe, MI 49788

Jeffrey W. Caminsky, Esq.

12